## Pelton v. Pelton.

(Decided January 23, 1931.)

W. G. DEARING and J. L. RICHARDSON for appellant.

R. F. PEAK for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

Appellant and appellee were married on July 1, 1916, and were divorced in April, 1929. The appellant was the plaintiff in the divorce proceeding, but his petition was dismissed, and the divorce was granted to the appellee on her counterclaim. The judgment contained the usual provision requiring each party to restore to the other such property not disposed of at the commencement of the action as either may have obtained from or through the other during the marriage in consideration thereof.

When the parties separated, they were living in a house at 920 Fehr avenue, Louisville, Ky., which had been deeded to the wife, and which cost $2,300. After the divorce was granted, appellant brought this action, in which he alleged that he had furnished the money with which the house had been purchased, and he asked that he be given title to the property, or, if the court should decide that he was not entitled to all the property, he be given a lien on it for the amount of the purchase price paid by him, and that the property be sold

to satisfy the lien. The chancellor dismissed his petition and he has appealed.

Prior to her marriage, appellee resided in Shelbyville, Ky., where she owned a house and lot. She sold this property in 1918 for $450, and purchased a house on Williams street in Louisville, Ky., for $600. This property was deeded to her. She paid $400 cash, and executed her note for $200 due one year after date, but which was paid six months before it was due. Appellant claimed that this note was paid out of his earnings, and that, in addition, he made repairs on the house to the amount of $150. On the other hand, appellee claims that, when she sold the Shelbyville property, there was due her $196 for rent, which was later collected, and this was applied on the $200 note executed by her for the Louisville property.

During the next ten years, the parties bought and sold numerous pieces of property, the property bought in each instance being sold at a profit, and the title to the property purchased always being taken in the name of the wife. Appellant claims that he turned his earnings over to his wife, and that they were deposited in her name in the bank, and that these earnings were used in purchasing the respective pieces of property. During all of this time, however, he seldom earned more than $10 or $15 a week, and his earnings were never sufficient to afford more than a modest support for himself and wife.

The evidence shows that the appellee was a successful dealer in real estate, and that the property she now owns was purchased out of profits realized from her real estate transactions. She sold the Williams street property for $1,000, or a profit of $400, and purchased property at 313 Campbell street for $1,150. She paid $1,000 cash and executed three notes for $50 each. She sold this property for $1,400, and paid the three $50 notes out of the proceeds. She then purchased property at 515 Campbell street for $1,500. She paid $1,000 cash, and executed five notes for $100 each, and these notes were paid when the property was sold for $2,400. She then purchased property at 221 Campbell street for $2,-600. She paid $2,000 in cash and executed six notes for $100 each, which were paid when the property was sold for $3,500. While she owned the last two mentioned pieces of property, she rented rooms which netted her

an income of approximately $20 a month for about two years. Out of the proceeds realized from the property located at 221 Campbell street she purchased the house and lot here in controversy, for which she paid $2,300.

This record discloses that appellee, though without education, is an intelligent and industrious woman, and through her business acumen has acquired the property here in controversy. No facts or circumstances are shown from which even an inference could be drawn that appellee contributed any of the purchase price.

All of the evidence supports the judgment of the chancellor, and it is accordingly affirmed.